UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAVID GIBSON,

                  *Plaintiff,*

    v.

SUPERINTENDENT EDWARD BURNETT,
*et al.*

                  *Defendants.*

No. 22-CV-1122 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

David Gibson
New Hampton, NY
*Pro Se Plaintiff*

Owen Crowley, Esq.
NYS Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

David Gibson ("Plaintiff") brings this pro se Action against New York State Department

of Corrections and Community Supervision employees Stephen Urbanski ("Urbanski"), Edward

Burnett ("Burnett"), Barbara Furco ("Furco"), Danielle Cebron ("Cebron"),[1] and Akinola

Akinyombo ("Akinyombo") (collectively, "Defendants").  (Am. Compl. 3–4 (Dkt. No. 12);

---

[1] The docket names as defendant "R.N. Danillie Lebron" in her individual capacity.  (*See generally* Dkt.)  Defense counsel represents that Defendant's name is "Danielle Cebron."  (*See* Defs.' Mem. of Law in Support of Partial Mot. to Dismiss ("Defs.' Mem.") 1 n.1 (Dkt. No. 86).)

Letter from Bahiya Lawrence, Esq. to Court (May 13, 2022) 1–2 (Dkt. No. 8).)[2] Construing the

pleadings liberally, Plaintiff raises claims pursuant to 42 U.S.C. § 1983 ("§ 1983"), alleging

violations of his First, Eighth, and Fourteenth Amendment rights. (*See* Am. Compl. ¶¶ 8–9.)

Before the Court is Defendants' Partial Motion to Dismiss (the "Motion") pursuant to Federal

Rule of Civil Procedure 12(b)(6). (*See* Defs.' Mem.; Mot. to Dismiss (Dkt. No. 85).) For the

reasons that follow, the claims against Defendants Burnett, Akinyombo, and Furco, as well as the

Eighth Amendment claim against Defendant Urbanski are dismissed without prejudice. The

Motion to Dismiss is denied as to the First Amendment retaliation claim against Defendant

Urbanski. It is further ordered that Plaintiff shall show cause by no later than May 29, 2026, as

to why this case should not be dismissed for failure to prosecute. If Plaintiff does not show

cause, he is advised that the dismissal of his claims may be converted to one with prejudice.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and are assumed true

for the purpose of resolving the instant Motion.[3]

---

[2] Generally, the Court refers to any unpaginated filings by the page number as designated by the Court's Electronic Case Filing System, shown on the upper-right hand corner of each document. When referring to the Plaintiff's Amended Complaint, the Court refers to those same ECF page numbers, except that when citing facts described in Plaintiff's Statement of Claim, the Court uses the paragraph numbers included by the Plaintiff within that narrative. (These differ from the paragraph numbers as cited in the Defendants' Motion to Dismiss, which appears to have ascribed a separate paragraph number for each sentence in the Statement of Claim.) The Court refers to paginated filings by their self-designated page numbers.

When quoting from Defendant's Amended Complaint, the Court does not use brackets to indicate changes to capitalization, nor does it include brackets when it corrects the spelling of Defendant Cebron's name.

[3] The Court has not considered the allegations contained in Plaintiff's pre-amendment Complaint for the purposes of deciding this Motion, nor the more detailed pleadings and filings

Plaintiff's allegations stem largely from incidents of purported sexual misconduct by Defendant Cebron directed at himself and other incarcerated individuals.  (Am. Compl. ¶¶ 1–6.) The claims brought against Defendant Cebron were not part of the Motion, and so the details of those allegations are largely omitted.  (*See generally* Defs.' Mem. 1.)  As relevant to this Motion, Plaintiff alleges that Defendant Cebron forced him to expose himself and engage in sexual activity; he also asserts that she threatened to have a sexual relationship with an unknown "porter" if he declined to do so, eventually engaging in such activities, as well as engaging in other sexual misconduct and threatening Plaintiff.  (Am. Compl. ¶¶ 1–7.)  On December 13, 2021, Plaintiff says that he made a PREA report to "Sargeant Edgmond," sued as a John Doe Defendant, who said that it "sound[ed] consensual."  (*Id.* ¶ 7.)  The Sargeant failed to document Plaintiff's report.  (*Id.*)

Plaintiff says that on December 14, 2021, he was at the infirmary and that a "Defendant Superintendent" ordered he be moved out of the infirmary; he says he was then placed in keeplock in retaliation for his PREA complaint.  (*Id.* at ¶ 8.)  After he was ordered moved from the infirmary, Plaintiff swallowed a "metal clip" from a surgical mask, hoping to conceal the item.  (*Id.*)  Instead, it became stuck in his throat.  (*Id.*)

---

he made in a related case, *Gibson v. Mount Vernon Montefiore Hosp. Exec. Dir.*, No. 22-CV-4213, 2024 WL 1217528 (S.D.N.Y. Mar. 19, 2024).  The Court cannot take judicial notice of the materials in the related case for their substance, even if they are consistent with Plaintiff's allegations made here. *See, e.g.*, *Ferranti v. Arshack, Hajek & Lehrman PLLC*, No. 20-CV-2476, 2021 WL 1143290, at *3 (S.D.N.Y. Mar. 24, 2021) ("The Court may take judicial notice of a document filed before another court and may consider such documents for the fact that they exist, but not for the truth of the matters asserted therein.") (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 222 (S.D.N.Y. 2008) ("A court may not take judicial notice of proceedings in another case for the truth of the matters asserted in the other litigation." (quotation marks and citation omitted)).

In keeplock, Plaintiff vomited to remove the clip from his throat.  (*Id.*)  He then concealed the clip in his penis.  (*Id.*)  In response to his request for medical assistance, Deputy of Health Akinyombo denied him treatment, "saying [Plaintiff] could get it out himself." (*Id.* (cleaned up).)  Approximately seven hours later, Plaintiff was taken to see the Regional Medical Unit ("RMU"), where he spoke with Nurse Administrator Barbara Furco; she denied his request to go to the hospital for treatment "saying Pla[i]ntiff could get [the clip] out himself."[4]  (*Id.*)

On the morning of December 15, 2021, Plaintiff was sent back to the RMU.  (*Id.* ¶ 9.) There, he told Deputy of Health Akinyombo that he was having sexual relations with Nurse Cebron, and that she was having sexual relations with an unknown porter.  (*Id.*)  Akinyombo did not meaningfully respond to Plaintiff's complaint.  (*Id.*)

On December 18, 2021, Plaintiff asserts he swallowed an unspecified item—seemingly a spork—and was sent to Mount Vernon Hospital.  (*Id.* ¶ 10.)  He asked instead to be sent to Westchester Medical, where there was a surgeon he trusted.  (*Id.*)  He told a doctor there that he

---

[4] The Amended Complaint alleges simply that Plaintiff was brought to "RMU," (Am. Compl. ¶ 8), but the Court notes that the term Regional Medical Unit is regularly abbreviated as "RMU," and it appears that the RMU acted as the medical treatment team for Fishkill, *see Zeigler v. Annucci*, No. 23-CV-707, 2024 WL 4252682, at *3 (S.D.N.Y. Sept. 20, 2024) ("On April 1, 2020, a B-Center inmate, though not one in Plaintiff's room, was quarantined in another housing unit because he interacted with a member of Fishkill staff who tested positive for COVID-19.  On the morning of April 2, 2020, an elderly B-Center inmate collapsed after a series of coughs and was escorted to the Regional Medical Unit ('RMU')." (citations omitted)); *Harrell v. N.Y.S. DOCCS*, No. 15-CV-7065, 2019 WL 3821229, at *2 (S.D.N.Y. Aug. 14, 2019) ("Nurse Laufman told CO Michels to bring Harrell to the Regional Medical Unit (RMU) to be seen by the OMH Medical Professionals."); *Jones v. Avanzato*, No. 14-CV-2044, 2016 WL 183565, at *1 (S.D.N.Y. Jan. 13, 2016) ("On or about July 13, 2011, a member of Fishkill's Regional Medical Unit ('RMU') took Plaintiff's blood sample, which was subsequently sent to Bio Reference Laboratory for testing.").

had a PREA complaint at Fishkill.[5]  (*Id.*)  Plaintiff then claims that he was told that he would not be permitted "to walk around with [a] [five] inch spork inside [of] him."  (*Id.*)  Nevertheless, Plaintiff was then sent back to Fishkill.  (*Id.*)

At Fishkill, Plaintiff says that he was denied medical treatment.  (*Id.*)  Deputy of Security Urbanski then reportedly "[r]etaliated" on Plaintiff, saying that he "messed with the nurse" and that he would not "die from [the] spork stuck inside [of his body]."  (*Id.*)  At Urbanski's direction, DOCCS personnel forced Plaintiff back into keeplock with the spork inside his body.  (*Id.*)  Plaintiff says he was medically cleared by Superintendent Burnett, without a CT scan, despite the spork still being inside his body.  (*Id.*)

In sum, Plaintiff says, the spork was inside his body for 89 days; he continued to experience blood in his stool; he "lost his release date[]"; and he experienced mental trauma due to these events. (*Id.* at 7.)

B.  Procedural Background

Plaintiff commenced the instant Action on February 2, 2022.  (Compl. (Dkt. No. 1).)  The Action was originally assigned to Judge Koeltl, who ordered that summonses issue for the named Defendants (Defendants Burnett, Akinyombo, and Cebron) and further ordered the Attorney General for the State of New York to identify the John and Jane Doe Defendants.  (Order of Service 1 (Dkt. No. 3).)[6]  The Attorney General's Office did so, but was unable to identify one

---

[5] Plaintiff brought claims against various members of the hospital staff, which were the subject of a separate action.  *See Gibson*, 2024 WL 1217528. That action was eventually dismissed for failure to prosecute.  (*See Gibson v. Mount Vernon Montefiore Hosp. Exec. Dir.*, No. 22-CV-4213, Order of Dismissal (S.D.N.Y. May 31, 2024) (Dkt. No. 64).)

[6] Throughout the proceedings, Plaintiff has filed various letters on the docket alleging that his rights were violated in incidents not related to the facts alleged in the Amended Complaint; the Attorney General responded to several of these letters. (*See, e.g.*, Dkt. No. 5;

Defendant. (Letter from Bahiya Lawrence, Esq. to Court (May 13, 2022) 1–2.) On June 10, 2022, Plaintiff filed an Amended Complaint, the operative complaint here. (Am. Compl.)

On August 11, 2022, the case was reassigned to this Court. (*See* Not. of Case Reassignment.) Despite the fact that Defendants had not yet been served, Plaintiff attempted to move for default in a letter dated August 25, 2022. (Letter from David Gibson to Court (August 25, 2022) 1 (Dkt. No. 17).) He asserted that he had served the Defendants via certified mail. (*Id.*) He made further filings to attempt to obtain default, including filing materials seeking an Order to Show Cause. (*E.g.* Proposed Order to Show Cause Without Em. Relief (Dkt. No. 29).) In a memo endorsement, this Court explained that service by certified mail does not satisfy the requirements of Federal Rule of Civil Procedure 4. (*See* Dkt. No. 33 at 5 (Memo Endorsement dated Nov. 15, 2022).) Service issues persisted through January of 2023. (*See* Dkt. No. 47 (Memo Endorsement dated Jan. 23, 2023) (explaining that Plaintiff could not serve the Defendants via certified mail).)

On January 23, 2023, this Court granted Plaintiff's request to proceed in forma pauperis, (*see* Dkt. No. 50 at 2 (Memo Endorsement dated Jan. 23, 2023)), and on April 25, 2024, this Court ordered the Clerk of Court to issue summonses for Defendants Burnett, Akinyombo, Cebron, and Furco, (*see* Order of Service 3 (Dkt. No. 55)). The Court further ordered the New York State Attorney General to ascertain the identity and badge number of Defendant "Sergeant Edgemond John Doe," and to provide the address where he may be served. (*Id.*) The Court explained that "[w]ithin thirty days of receiving this information, Plaintiff must file a second amended complaint naming the John Doe Defendant." (*Id.*)

---

Dkt. No. 7; Dkt. No. 9; Dkt. No. 13; Dkt. No. 14; Dkt. No. 16.) These letters are not relevant to this Motion and so are not described here.

6

On June 24, 2024, The New York State Attorney General's Office filed a letter explaining that "there is no individual by the name Edgmond employed at Fishkill C.F." but that there was a sergeant at Fishkill C.F. named Eschmann.  (Letter from Owen M. Crowley, Esq. to Court (June 24, 2024) 1 (Dkt. No. 57).)  The letter provided an address for Plaintiff to effect service of this individual, if they were, in fact, the individual Plaintiff sought to name as a defendant.  (*Id.*)  So far as the docket shows, Plaintiff never served this individual; Plaintiff also failed to file a Second Amended Complaint.  (*See generally* Dkt.)

On October 15, 2024, the Court issued an Order to Show Cause, ordering Plaintiff to show cause by no later than November 14, 2024 as to why he has not waived his right to file a Second Amended Complaint.  (*See* Order to Show Cause (Dkt. No. 68).)  Plaintiff did not respond, (*see generally* Dkt.) and so the Court concluded that, "[b]ecause Plaintiff was given numerous opportunities to amend his Complaint and failed to do so, and in so doing repeatedly failed to comply with this Court's Orders, . . .  Plaintiff will no longer be granted leave to file a Second Amended Complaint," (Order 2 (Dkt. No. 69)).

Defendant Cebron answered the Amended Complaint on January 15, 2025.  (*See* Answer (Dkt. No. 72).)  On February 5, 2025, Defendants submitted a letter to the Court, noting that Plaintiff had not communicated with either the Court or Defendants since February 7, 2024, and asking the Court to dismiss the Action for failure to prosecute. (*See* Letter from Owen M. Crowley to Court (Feb. 5, 2025) (Dkt. No. 73).)  On February 6, 2025, the Court ordered that Plaintiff should show cause why the case should not be dismissed for failure to prosecute.  (*See* Order to Show Cause (Dkt. No. 74).)

In response, Plaintiff again attempted to move for a default judgment, asking the Court to reconsider his Order to Show Cause.  (*E.g.* Mot. to Refile (Dkt. No. 76).)  The Court denied

Plaintiff's Motion for an Order to Show Cause, because Plaintiff did not demonstrate that Defendants were in default.  (Dkt. No. 80 (Memo Endorsement dated Mar. 26, 2025).)  The Court then set a briefing schedule on Defendants' Motion to Dismiss. (Order (Dkt. No. 81).)

On April 24, 2025, Defendants filed the Motion and the supporting Memorandum of Law.  (Defs.' Mem.; Defs.' Notice of Mot. to Dismiss.)  Plaintiff filed no opposition.  (*See generally* Dkt.)  On June 23, 2025, Defendants filed a letter explaining their position that Plaintiff had failed to provide "any good cause reason for his failure to comply with the Court's February 6, 2025 Order" to Show Cause, and requesting that the Court treat the Motion to Dismiss as "fully submitted, grant the Motion in its entirety, and dismiss Plaintiff's claims with prejudice," both for the reasons laid out in their Memorandum of Law and due to Plaintiff's continued failure to prosecute.  (Letter from Owen M. Crowley, Esq. to Court (June 23, 2025) 1–2 (Dkt. No. 89).)  Defendants further requested that the claims against Defendant Cebron be *sua sponte* dismissed for failure to prosecute.  (*Id.* at 2.)  The Court issued a memo endorsement directing the Plaintiff to respond to this letter by July 7, 2025.  (Dkt. No. 90 at 2 (Memo Endorsement dated June 23, 2025).)  The Plaintiff filed no response.  (*See generally* Dkt.)

Defendants again filed a letter asking the Court to dismiss the claims against the Defendants who filed the Motion, and requesting that the Court *sua sponte* dismiss the claims against Defendant Cebron. (*See* Letter from Owen M. Crowley, Esq. to Court (July 16, 2025) 1–2 (Dkt. No. 91).)  The Court determined that it would treat the Motion to Dismiss as fully submitted and would decide it on the merits.  (*See* Mem. Endorsement 2 (Dkt. No. 92).)

Since the Court deemed the Motion fully submitted, Plaintiff has filed two letters on the docket; neither contains substantive legal argument.  (*See* Letter from David Gibson to the Court (Aug. 22, 2025) (Dkt. No. 93) (informing the Court that Plaintiff had been detained in a

8

psychiatric hospital, was unable to "continue this case alone," and had applied for legal services); Letter from David Gibson to the Court (Sept. 6, 2025) (Dkt. No. 94) (substantially similar)). They suggest that Plaintiff has struggled to prosecute this case given that he is currently confined in an inpatient psychiatric treatment center and is unrepresented by legal counsel. (*See* Letter from David Gibson to the Court (Aug. 22, 2025).)

## II.  Discussion

### A.  Standard of Review

When ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 678 (quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Specifically, the plaintiff must allege facts sufficient to show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and if the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *Twombly*, 550 U.S. at 570.

On a Rule 12(b)(6) motion to dismiss, the question "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012).  Accordingly, the "purpose

9

of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quotation marks omitted). To decide the motion, the Court "may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

## B. Analysis

Liberally construed, Plaintiff's Complaint raises multiple claims arising under federal law. As relevant to the Motion, Plaintiff alleges that (1) he experienced retaliation in violation of his First Amendment rights when he was placed in keeplock on December 14, 2021 by the "Defendant Superintendent"—most likely referring either to Urbanski or Burnett;[7] (2)

---

[7] Defendants represent that Defendant Urbanski and Defendant Burnett each possessed the title "Superintendent," but that Defendant Urbanski was a Deputy Superintendent at the time of the allegations in the Complaint. (Defs.' Mem. 6 n.3.)

Akinyombo and Furco violated his Eighth and/or First Amendment rights when they directed him to remove the clip from his genitalia; (3) Akinyombo violated his Eighth or Fourteenth Amendment rights when Plaintiff "told Defendant Akinyombo [that] he was having sexual affairs with [Defendant Cebron]" and that Cebron was also having sexual contact with the unknown porter; (4) Urbanski violated his First and/or Eighth Amendment rights when he said Plaintiff "messed with the nurse" and ordered staff to force Plaintiff into keeplock while the spork was inside his body; and (5) Burnett violated Plaintiff's rights, likely his Eighth Amendment rights, by clearing him without a CT scan despite the spork being inside his body.[8] (Am. Compl. at ¶¶ 7–10.)

 1. Personal Involvement

 "[B]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Wiggins v. Griffin*, 86 F.4th 987, 996 (2d Cir. 2023). In other words, "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020); *see also Washington v. Morley*, No. 21-CV-7159, 2024 WL 4252596, at *4 (S.D.N.Y. Sept. 20, 2024) ("It is well settled that, in order to establish a defendant's individual

---

[8] The Court construes each of these claims as one brought against Defendants in their individual capacity; any claims asserted against the officials in their official capacity would be barred by the Eleventh Amendment. *See Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022) ("[T]he Eleventh Amendment bars the award of money damages against state officials in their official capacities); *Jaime v. N.Y.S. Dep't of Corr. Cmty. Supervision*, No. 24-CV-3763, 2024 WL 3028938, at *2 (S.D.N.Y. June 17, 2024) ("[Eleventh Amendment] doctrine also bars claims for damages against state officers and employees in their respective official capacities . . . ." (internal citations omitted)). (*See also* Am. Compl. 5 (seeking "6 million [dollars] in pun[it]ive relief and compensat[ory] relief").)

liability in a suit brought under 42 U.S.C. § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional deprivation." (citation and quotation marks omitted, alterations adopted)). Accordingly, "a plaintiff may not rely on a special test for supervisory liability" instead, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 616–18.

Urbanski and Burnett argue that the claims against them should be dismissed because they were not personally involved in the alleged constitutional violations. (Defs.' Mem. at 5.) As to the Eighth Amendment claims in particular, they assert that they could not be personally involved given that "neither . . . possessed the authority to" move Plaintiff out of the infirmary "as neither of them are medical providers." (Defs.' Mem. at 6 (citing *Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000).) This fact, they reason, is sufficient to support the dismissal of the asserted claims. (Defs.' Mem. at 5–6.)

The mere fact that the Defendants are not medical personnel is insufficient to support dismissal. "Although deliberate indifference claims are most often asserted against medical personnel, non-medical personnel may also be found to have engaged in deliberate indifference." *Dumel v. Westchester Cnty.*, No. 19-CV-2161, 2021 WL 738365, at *10 (S.D.N.Y. Feb. 25, 2021) (internal citations and quotation marks omitted) (collecting cases); *see also, e.g.*, *Ellis v. United States*, No. 23-CV-8350, 2025 WL 895457, at *7 (E.D.N.Y. Mar. 24, 2025) (collecting cases).

The decision most heavily relied upon by Defendants, *Cuoco*, 222 F.3d 99 , is not to the contrary. First and foremost, there is nothing on the face of the Complaint, or any other information that the Court may properly consider in evaluating Defendants' Motion to Dismiss, that establishes that Urbanski and Burnett "lacked the authority" to order Plaintiff be transferred

12

or cleared.  (Defs.' Mem. at 6.)  In other words, the type of limited authority they assert is not a fact alleged by Plaintiff, and, at this stage, the Court's inquiry is limited to the facts in the Amended Complaint.  The analogy to *Cuoco* is also unpersuasive because, in that case, the Second Circuit expressly concluded it would have been inappropriate to dismiss on a Rule 12(b)(6) Motion the plaintiff's claim that non-medical employees should have intervened in her medical treatment.  *See Cuoco*, 222 F.3d at 111.[9]

Addressing personal involvement more generally, the Court must construe Plaintiff's allegations, even if thin, to raise "the strongest [claims] they suggest."  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted).  If, for instance, the Amended Complaint contains "clear statements that" the Defendants prevented Plaintiff from receiving treatment, then Plaintiff has "plausibly allege[d] [the Defendants'] personal involvement in the alleged misconduct." *Morley*, 2024 WL 4252596, at *4; *see also Manley v. Mazzuca*, No. 01-CV-5178, 2004 WL 253314, at *4 (S.D.N.Y. Feb. 10, 2004) (denying motion to dismiss where plaintiff challenged defendants' failure to help him receive treatment, rather than a failure to contravene medical providers' decisions).

As described, Plaintiff first asserts a retaliation claim based on the actions of the "Defendant Superintendent" who "had [him] moved out [of the] infirmary."  (Am. Compl. ¶ 8.)  The Amended Complaint does not adequately state this claim against either Urbanski or Burnett, given that it "fails to specify who was personally involved in . . . the complained[-]of conduct."

---

[9] In the relevant portion of *Cuoco*, the plaintiff argued that defendant facility supervisors were liable due to their failure to intervene in the denial of a course of medical treatment.  *See* 222 F.3d at 110.  The Second Circuit decided that those defendants had qualified immunity in part based on the fact that the supervisors at issue had no authority to intervene in medical treatment or separately prescribe the desired treatment.  *Id.* at 111.  *Cuoco* does not stand for a general principle that non-medical personnel are *never* subject to deliberate indifference claims.

*Miller v. City of Ithaca*, No. 10-CV-597, 2010 WL 3809842, at *12 (N.D.N.Y. Sept. 22, 2010);

*see also Betances v. City Comm'r of NYC Corr.*, No. 24-CV-2596, 2024 WL 1858221, at *3

(S.D.N.Y. Apr. 29, 2024) (dismissing complaint at PLRA screening stage, with leave to amend,

in part on the basis that "it is unclear against whom Plaintiff's claim for deliberate indifference to

his serious medical needs [is] asserted").

Plaintiff further alleges a First and/or Eighth Amendment claim against Urbanski.  In

particular, he claims that Urbanski "had [other employees] suit[] up" and "force Plaintiff to

keeplock . . . with [a] spork inside him."  (Am. Compl. ¶¶ 9–10.)  Construed in the light most

favorable to Plaintiff, the Complaint plausibly alleges that Urbanski was personally involved in a

violation of his constitutional rights.  *See Judd v. Guynup*, No. 12-CV-58, 2012 WL 5472113, at

*8 n.4 (N.D.N.Y. Oct. 17, 2012) (reasoning that personal involvement would have been satisfied

if "[the p]laintiff clearly alleged that [the d]efendant . . . directed that he be placed in SHU"),

*report and recommendation adopted*, 2012 WL 5471139 (N.D.N.Y. Nov. 9, 2012); *cf. Smith v.*

*Sullivan,* No. 20-CV-659, 2023 WL 3727447, at *10–11 (N.D.N.Y. May 3, 2023)

(recommending dismissal where the plaintiff admitted that the defendants did not order he be

housed in the SHU), *report and recommendation adopted*, 2023 WL 3722137 (N.D.N.Y. May

30, 2023); *Douglas v. Annucci*, No. 14-CV-6018, 2022 WL 2306934, at *8, 10 (W.D.N.Y. June

27, 2022) (finding no triable issue of fact as to personal involvement, in part on the same

basis).[10]

---

[10] In this respect, Plaintiff's allegations differ, for instance, from a case where a plaintiff attempts to hold non-medical personnel liable merely by virtue of the fact that they held policy-making or supervisory roles over the individuals who denied Plaintiff medical care, where such claims are routinely denied.  *See, e.g. Tangreti*, 983 F.3d at 619 ("[Plaintiff] must therefore establish that [defendant] violated the Eighth Amendment by [defendant's] own conduct, not by

14

As to Burnett, Plaintiff asserts that Burnett "medically clear[ed]" him "with no CT scan" and the "spork still inside him." (Am. Compl. ¶ 10.) Burnett asserts that this claim fails, both because he lacked authority to order a CT scan as non-medical staff, and because he could not be responsible for supervising medical staff given his role and lack of training. (Defs.' Mem. 6 (citing *Cuoco*, 222 F.3d at 111 and *Hardy v. Diaz*, 08-CV-1352, 2010 WL 1633379, at *7 (N.D.N.Y. Mar. 20, 2010), *report and recommendation adopted*, 2010 WL 163379 (N.D.N.Y. Apr. 21, 2010)). But at least plausibly, the Amended Complaint provides "clear statements that" Burnett "himself" medically cleared Plaintiff. *Washington*, 2024 WL 4252596, at *4 (citing, *inter alia*, *Bushey v. Morley*, No. 21-CV-76, 2021 WL 4134794, at *3 (N.D.N.Y. Sept. 10, 2021)). The Court therefore assumes—without deciding—that Plaintiff has adequately pled personal involvement as to Defendant Burnett on this second claim.

2. Retaliation Claim Against Urbanski

Regarding First Amendment retaliation claims: "[t]he Second Circuit has instructed district courts to view 'prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official[—]even those otherwise not rising to the level of a constitutional violation[—]can be characterized as a constitutionally

---

reason of [defendant's] supervision of others who committed the violation."); *Knight v. New York State Dep't of Corr.*, No. 18-CV-717, 2020 WL 3893282, at *10 (S.D.N.Y. July 10, 2020) ("[B]ecause mere linkage in the prison chain of command is insufficient to implicate a senior prison official in a § 1983 claim," all individual capacity claims against [defendant] are dismissed." (quotation marks and citation omitted)); *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004) ("Of the three non-medical defendants, [some] were superintendents of Woodbourne, not merely linked in the prison chain of command, or faulted for failing to dictate the specific medical treatment of an inmate, but adequately alleged to have had responsibility for enforcing or allowing the continuation of the challenged policies that resulted in the denial of [Plaintiff's] treatment." (internal citations and quotation marks omitted, alteration adopted)). The only authorities cited by Defendants in support of the argument are such cases. (*See* Defs.' Mem. 5 (citing *Ali v. Szabo*, 81 F. Supp. 2d 447 (S.D.N.Y. 2000); *Cuoco*, 222 F.3d at 111.).)

15

proscribed retaliatory act.'"  *Baltas v. Snyder*, No. 24-CV-1487, 2025 WL 509423, at *4 (D.

Conn. Feb. 14, 2025) (quoting *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015)); *accord*

*Baker v. Powell*, No. 23-CV-1626, 2025 WL 2693629, at *5 (S.D.N.Y. Sept. 22, 2025) (same).

Given that "prisoner retaliation claims are easily fabricated," and therefore "pose a substantial

risk of unwarranted judicial intrusion into matters of general prison administration," courts are

"careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir.

2003).

To state a claim for First Amendment retaliation, Plaintiff is required plausibly to plead:

"(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action

against the plaintiff, and (3) that there was a causal connection between the protected speech and

the adverse action." *Samuels v. New York Dep't of Lab.*, No. 23-CV-8004, 2025 WL 27737, at

*4 (S.D.N.Y. Jan. 3, 2025) (wholly quoting *Dolan*, 794 F. 3d at 294); *accord Baker*, 2025 WL

2693629, at *5 (same).  "An action is 'adverse' when it 'would deter a similarly situated

individual of ordinary firmness from exercising [their] constitutional rights.'" *Camacho v.*

*DuBois*, No. 21-CV-06180, 2022 WL 17807433, at *3 (S.D.N.Y. Dec. 19, 2022) (quoting

*Ruggiero v. Cty. of Orange*, No. 19-CV-3632, 2020 WL 5096032, at *7 (S.D.N.Y. Aug. 28,

2020)); *see also Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) ("Only retaliatory conduct

that would deter a similarly situated individual of ordinary firmness from exercising his or her

constitutional rights constitutes an adverse action for a claim of retaliation." (internal quotation

marks and citation omitted)).  As to the final element, "[a] plaintiff may establish causation

either directly through a showing of retaliatory animus, or indirectly through a showing that the

protected activity was followed closely by the adverse action." *Smith v. County of Suffolk*, 776

F.3d 114, 118 (2d Cir. 2015); *see also Bennett*, 343 F.3d at 138 ("[T]he temporal proximity

16

between the [protected activity] and the alleged retaliation provides circumstantial evidence of retaliation."); *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) ("One way a plaintiff can establish a causal connection is by showing that protected activity was close in time to the adverse action.  Our Circuit has declined to draw a bright line as to how close in time the events must be." (internal citation and quotation marks omitted)).

Defendants do not challenge that Plaintiff's PREA complaints are protected activity under the First Amendment, nor could they.  *See Salley v. Capra*, No. 23-CV-4566, 2025 WL 950991, at *5 (S.D.N.Y. Mar. 28, 2025) ("[I]t is well established that 'retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.'" (citation omitted)); *Baker*, 2025 WL 2693629, at *6 (concluding the same).

As to the initial claim of retaliation—that Plaintiff was placed in keeplock by an unspecified "Defendant Superintendent"—Defendants argue that Plaintiff's claim fails due to a lack of causal connection between his being placed in keeplock and his protected speech, and/or due to a failure to allege awareness of Plaintiff's PREA complaint.[11]  (Defs.' Mem. 8.)  In addition to this claim failing due to a failure to allege personal involvement, the Court agrees that this claim is defective on the additional basis that Plaintiff failed to plead awareness.

For a First Amendment retaliation claim to succeed, a plaintiff must plead facts that support causality.  Courts in this district have construed the causality requirement as requiring

---

[11] Defendant Urbanski also argues that Plaintiff did not provide "a timeline for said keep lock," and therefore failed to allege any temporal proximity.  (Defs.' Mem. 8.)  The Court notes that this is incorrect; read charitably, Plaintiff's Amended Complaint provides such a timeline. (*See* Am. Compl. ¶¶ 8–9 (alleging that Plaintiff made a PREA complaint on December 13, 2021; went to the infirmary and was moved to keeplock on December 14, 2021; and was sent back to the RMU several hours later, returning to the RMU again on December 15, 2021).)

that a plaintiff allege facts sufficient to support the conclusion that the defendant was aware of the protected activity. *See Brown v. Annucci*, No. 19-CV-2296, 2025 WL 1581815, at *3 (S.D.N.Y. June 3, 2025) ("In order to sufficiently plead a First Amendment retaliation a claim, a plaintiff must allege . . . the defendant was aware of the activity[.]" (quotation marks and internal citation omitted)); *see also Sloley v. New York State Dep't of Corr. & Cmty. Supervision*, No. 24-662, 2025 WL 1416658, at *3 (2d Cir. May 16, 2025) (summary order) (concluding that plaintiff failed to demonstrate a likelihood of success on a First Amendment retaliation claim where plaintiff, among other issues, failed to "allege that [defendant] was aware of [plaintiff's] grievances"); *Pavone v. Puglisi*, 353 F. App'x 622, 625 (2d Cir. 2009) (summary order) ("[A] plaintiff must still allege that defendants were aware of the protected activity." (citation omitted)).

Plaintiff's only allegation that could support awareness on behalf of the "Defendant Superintendent" is the assertion that the Defendant "had Plaintiff moved out [of the] infirmary . . . in retaliation for [the] PREA [complaint]."  (Am. Compl. ¶ 8.)  This allegation on its own is conclusory and therefore insufficient to state a First Amendment retaliation claim. *See Houghtaling v. Downes*, 623 F. Supp. 3d 145, 160 (W.D.N.Y. 2022) (justifying dismissal in part by concluding that the "amended complaint includes no facts supporting how [the defendants] were aware or became aware of the [asserted protected activity]"); *Kuck v. Danaher*, 822 F. Supp. 2d 109, 154–55 (D. Conn. 2011) (reasoning that causality was not alleged on the same basis); *Shekhem' El-Bey v. City of New York*, 419 F. Supp. 2d 546, 552 (S.D.N.Y. 2006) (dismissing First Amendment retaliation claim where the plaintiff set "forth nothing more than a single, vague and conclusory allegation" to support causation); *Wilson v. Kelly*, No. 11-CV-00030, 2012 WL 3704996, at *9 (N.D.N.Y. Aug. 27, 2012) (dismissing First Amendment

18

retaliation claim on a Rule 12(b)(6) motion where the plaintiff did not allege facts sufficient to support awareness); *see also Pavone*, 353 F. App'x at 625 ("Without further allegations regarding [inter alia] . . . the [defendant's] awareness of the speech . . . or other facts sufficient to support an inference that protected conduct played a role in the alleged adverse actions . . . [the p]laintiffs have not sufficiently pleaded a claim of retaliation.") (summary order)).

Urbanski challenges the claim based on the second instance of alleged retaliation—that Urbanski "retaliated" against Plaintiff "saying he messed with the nurse" and that he would not "die from [the] spork stuck inside" of his body, before directing other staff to "force Plaintiff [into] keeplock . . . with [the] spork inside" of his body, (Am. Compl. ¶ 9)—on the same basis. The Court concludes, however, that Plaintiff has adequately pled a First Amendment violation based on this incident. The first element—protected speech—is undoubtedly satisfied. As noted, a complaint under the PREA is protected activity for the purposes of a First Amendment retaliation claim. Construing the facts in the light most charitable to Plaintiff, the Complaint also supports Urbanski's awareness of Plaintiff's PREA complaint. Urbanski's alleged comment that Plaintiff "messed with" the nurse could be read to refer the attempted PREA complaint; the attempted complaint was based on Cebron's alleged behavior, and could plausibly cause difficulties for her. Causing "trouble" for someone is a primary definition of the term "mess with." *See Mess With*, The Britannica Dictionary, https://www.britannica.com/dictionary/mess (last visited Mar. 29, 2026) (listing, as part of first definition, "to cause trouble for (someone)"). While Urbanski could also have meant that "Plaintiff was harassing the nurse," as Defendants argue, (Defs.' Mem. 9), at this stage the Court is not at liberty to adopt this construction over a plausible one that would support Plaintiff's claim. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (reiterating standard that, at the motion to dismiss stage,

19

courts "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor" (quotation marks and citation omitted)).[12]  Under this standard, Urbanski's comment is sufficient to support his awareness of the PREA complaint, because it can be construed as directly referring to the complaint.  *See Brown*, 2025 WL 1581815, at *3 (concluding plaintiff pleaded awareness where he alleged that defendant "threatened to have [him] assaulted for filing a complaint"); *cf. Faulk v. Fisher*, 545 F. App'x 56, 59 (2d Cir. 2013) (summary order) (contrasting defendant who allegedly "commented on [Plaintiff's] successful grievance" with two defendants as to whom there was "no evidence suggesting that they were . . . even aware of[] his . . . grievance").

Plaintiff's allegations satisfy the adverse action element of a retaliation claim.  *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (finding "sentence of three weeks in keeplock" constituted adverse action).  Although Plaintiff does not appear to have alleged the duration of his time in keep lock as a result of this incident, "[c]onfining a prisoner to keeplock is sufficient to establish an adverse action," particularly at the motion to dismiss stage. *Gunn v. Malani*, No. 20-CV-2681, 2023 WL 2664805, at *7 (S.D.N.Y. Mar. 28, 2023) (collecting cases); *see also Mack v. Hall*, No. 18-CV-0875, 2020 WL 5793438, at *8 (N.D.N.Y. July 27, 2020) (recommending finding of adverse action based on two-day confinement in a medical cell), *report and recommendation adopted*, 2020 WL 5775205 (N.D.N.Y. Sept. 28, 2020).

The Amended Complaint also supports the third element of causality.  Plaintiff alleges that Urbanski expressly referred to Plaintiff "messing with" Cebron before giving the order that

---

[12] For the same reason, Urbanski's argument that Plaintiff cannot state a First Amendment claim based on these events because he was harassing Cebron, and harassment is not protected speech, also fails.  (Defs.' Mem. 9.)

he be sent to keeplock; this express statement demonstrates the causal connection between the protected activity and the alleged retaliation.  (Am. Compl. ¶ 9.)  *See Hayes v. Dahlke*, 976 F.3d 259, 273 (2d Cir. 2020) (concluding that "the very language" in assertedly retaliatory misbehavior report supported possibility that action causally connected to the report, on the basis that it "ties the protected act to the retaliation," including statement by defendant that if "you mess with one of us, you got to mess with all of us" (internal quotation marks and citation omitted)); *Arriaga v. Annucci*, No. 23 CV 1941, 2024 WL 1743300, at *12 (S.D.N.Y. Apr. 23, 2024) (reasoning that comment suggesting retaliatory animus supported causality); *Henderson v. Hembrook*, No. 18-CV-6091, 2023 WL 6258944, at *7 (W.D.N.Y. Sept. 26, 2023) (reasoning that "direct evidence of a retaliatory motive," in the form of comments by prison officer, can overcome other circumstances that might weaken causal inference, and collecting cases).  It also appears plausible, given that Plaintiff's Amended Complaint is presented chronologically, that this event occurred before December 23, 2021,[13] a matter of weeks after Plaintiff attempted to

---

[13] The Court further notes that, to the extent that Defendant Urbanski is attempting to argue that this claim, too, should be dismissed because it fails to set out a time frame—a point that is unclear in the Motion—this argument fails because Plaintiff's narrative suggests that this interaction occurred *after* the PREA complaint.  (Am. Compl. ¶¶ 8–10 ("On December 13, 2021 Pla[i]ntiff reports PREA . . . John Doe Defendant say[s] sound consensual . . . Defendant doesn't document Pla[i]ntiff['s] report . . . December 18, 2021 . . . Pla[i]ntiff is  . . . in Mount Vernon Hospital . . . Pla[i]ntiff is sent back to Fishkill[.]  Back at Fishkill . . . Defendant Deputy of Security [Steph]en Urbanski retaliated on Plaintiff saying he messed with the nurse [and] he won't die from [the] spork stuck inside [his body.] . . . [He orders other employees to] suit[] up and force Pla[i]ntiff to keeplock . . . with spork inside [him.]  12-23-22 Superintendent Burnett[] medically clear[s] Pla[i]ntiff with no CT Scan [and the] spork still inside him.").)  Accordingly, *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), cited by Defendants, is inapposite.  That decision rejected a retaliation claim in part on the grounds that it was unclear whether the alleged retaliation took place before or after the challenged activity.  *Id.*  Although Plaintiff's complaint is not the model of clarity, it is obvious that this action is alleged to have occurred after Plaintiff's attempt to make a PREA complaint.  (*See* Am. Compl. ¶ 10.)

21

file his PREA complaint on December 13, 2021.[14]  (*See* Am. Compl. ¶¶ 7, 10.)  That temporal

proximity further supports the existence of a causal connection.  *See, e.g.*, *Hayes*, 976 F.3d at

273 (temporal proximity of one month supports causal connection); *Arriaga*, 2024 WL 1743300,

at *12 (concluding allegations "strongly support[ed]" a causal connection where plaintiff

claimed he had been subject to adverse actions "in the days following" the protected activity,

further adverse action "in the subsequent weeks" and a final adverse transfer from the facility

"only three months later").

Urbanski contends that Plaintiff cannot state a First Amendment retaliation claim because

his "own conduct was the likely cause of the disciplinary action, and Plaintiff would have been

disciplined via keep lock anyway."  (Defs.' Mem. 9.)  In support, however, Urbanski cites

largely inapposite decisions.[15]  The Court notes that, after the plaintiff meets the burden of

alleging a causal connection between the protected activity and the retaliatory action, a defendant

official "bears the burden of establishing that the disciplinary action would have occurred 'even

---

[14] The Amended Complaint appears erroneously to list this date as 12/23/22; given that the document was filed on June 10, 2022, the Court assumes Plaintiff meant 12/23/21.  (*See* Am. Compl. at 1, 7.)

[15] For instance, Urbanski cites *Holland v. Goord*, 758 F.3d 215 (2d Cir. 2014), a free exercise challenge to a policy that required all incarcerated individuals to drink water and provide urine samples. The *Holland* court reasoned that the plaintiff had not stated a retaliation claim because, although the plaintiff's observance of Ramadan "caused him to decline to provide a urine sample, which in turn prompted the disciplinary action," there was evidence in the record that, even if the plaintiff had asserted a different basis for his objection, he would have faced the same disciplinary action. *Id.* at 226.  Urbanski also cites *Abascal v. Hilton*, No. 04-CV-1401, 2008 WL 268366, at *9 (N.D.N.Y. Jan. 30, 2008), where the plaintiff attempted to allege that his placement in a "strip cell" was based on a desire to retaliate against him due to letters that he had been writing to state officials, rather than a response to the plaintiff's severe mental health symptoms, an argument the district court soundly rejected.  The difference between these cases and the instant one hardly requires explanation.  *Holland* involved a generally applicable policy unrelated to the plaintiff's religious practice.  Meanwhile, the facts alleged in *Abascal* were not susceptible to the interpretation advanced by the plaintiff.

absent the retaliatory motivation,' which he may satisfy by showing that the inmate 'committed the . . . prohibited conduct charged in the misbehavior report.'" *Holland*, 758 F.3d at 226 (quoting *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002)).  A retaliation defendant satisfies this burden when it is "undisputed that [plaintiff] . . . in fact committed the prohibited conduct." *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994); *accord Brandon v. Kinter*, No. 13-CV-939, 2023 WL 2382637, at *22 (N.D.N.Y. Mar. 6, 2023) (same).  This standard is not satisfied at this stage.  Plaintiff neither alleges nor concedes that he "harassed" Cebron, or that he engaged in any other misconduct.  (*See generally* Am. Compl.)  On a Motion to Dismiss under Rule 12(b)(6), the Court considers the adequacy of the pleadings, not fact-based defenses.

3. Deliberate Indifference Claim Against Akinyombo, Furco, Burnett, and Urbanski

As noted above, Plaintiff's Complaint could be construed to include an Eighth Amendment claim of deliberate indifference.  (Am. Compl. ¶¶ 8, 10.)  "The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners."  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quotation marks omitted) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "There are two elements to a claim of deliberate indifference to a serious medical condition."  *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009), *overruled on other grounds by Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017).

"The first requirement is objective:  the alleged deprivation of adequate medical care must be sufficiently serious."  *Spavone*, 719 F.3d at 138 (quotation marks omitted).  Under this objective requirement, a court must inquire first, "whether the prisoner was actually deprived of adequate medical care," and second, "whether the inadequacy in medical care is sufficiently serious."  *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006).  The latter requires the Court "to examine how the offending conduct is inadequate and what harm, if any, the

inadequacy has caused or will likely cause the prisoner." *Id.* at 280.  As part of this objective element, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).  "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has presented "a non-exhaustive list" of factors to consider: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.*; *see also Morales v. Fischer*, 46 F. Supp. 3d 239, 247 (W.D.N.Y. 2014) (same).

"The second requirement is subjective:  the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138.  Here, the inquiry is whether Defendants "knew of and disregarded an excessive risk to [Plaintiff's] health or safety" while "both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." *Caiozzo*, 581 F.3d at 72 (alterations and quotation marks omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference.").  "Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Nielsen* 746 F.3d at 63 (quotation marks omitted); *see also Gladden v. City of New York*, No. 12-CV-7822, 2013 WL 4647193, at *2 (S.D.N.Y. Aug. 29, 2013) ("To meet the subjective element, the plaintiff must show that the defendant acted with more than mere negligence, and instead knew

24

of and disregarded an excessive risk to inmate health or safety." (citation and quotation marks omitted)).  In contrast, "mere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., . . . a conscious disregard of a substantial risk of serious harm."  *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (citation and quotation marks omitted).  Moreover, "mere disagreement over the proper treatment does not create a constitutional claim," and "so long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  *Id.*; *see also Crique v. Magill*, No. 12-CV-3345, 2013 WL 3783735, at *3 (S.D.N.Y. July 9, 2013) ("The mere fact that an inmate feels that he did not receive adequate attention . . . does not constitute deliberate indifference.").

Defendants Akinyombo and Furco move to dismiss on the grounds that Plaintiff's allegations do not satisfy the objective component of the Eighth Amendment analysis.  (*See* Defs.' Mem. 10–11.)  The Court agrees.  Although the facts alleged are somewhat graphic, Plaintiff has not alleged that he experienced pain due to a lack of treatment when the metal clip was in his throat or after he stuck it into his penis.  (*See generally* Am. Compl.)  The only physical injury he describes is "blood in [his] stool," which is not plausibly connected to the incident with the metal clip.  (*See id.* at 7.)  As the Second Circuit has "repeatedly" explained, "conditions causing pain falling somewhere between annoying and extreme" but nevertheless short of "life-threatening" can be "serious medical conditions"; still, it has reiterated that the Eighth Amendment "contemplates" injuries based on "a condition of urgency that may result in degeneration or extreme pain."  *Collymore v. Krystal Myers, RN*, 74 F.4th 22, 31 (2d Cir. 2023) (internal citations and quotation marks omitted); *see also Chance*, 143 F.3d at 702 ("The standard . . . contemplates a condition of urgency that may result in degeneration or extreme

pain.  A prisoner who nicks himself shaving obviously does not have a constitutional right to cosmetic surgery.  But if prison officials deliberately ignore the fact that a prisoner has a five-inch gash on his cheek that is becoming infected, the failure to provide appropriate treatment might well violate the Eighth Amendment." (quotation marks and citations omitted)).  Plaintiff makes no allegations to this effect; he does not even allege that he experienced pain.  The failure to plead sufficiently serious symptoms is fatal to his claim.  *See McFadden v. Keyser*, No. 23-CV-802, 2025 WL 846371, at *4 (S.D.N.Y. Mar. 18, 2025) (dismissing claim without prejudice where the plaintiff "generally describe[d] his medical conditions" and stated he experienced "pain" without further factual averments); *Thomas v. Schriro*, No. 10-CV-8787, 2013 WL 3491079, at *3 (S.D.N.Y. July 12, 2013) (finding allegations of pain in injured foot and severe foot fungus, without allegations that symptoms were life-threatening or worsening under course of treatment, insufficient to satisfy objective prong); *Hale v. Rao*, 768 F. Supp. 2d 367, 379–80 (N.D.N.Y. 2011) (rejecting Eighth Amendment claim brought by a plaintiff who stuck a staple into his foot, causing a "superficial" injury).  Accordingly, the Eighth Amendment claims against Akinyombo and Furco fail as a matter of law.[16]

Although Defendants have not moved to dismiss the claim on this basis, the Court notes that, to the extent the Amended Complaint could be construed as stating an Eighth Amendment claim against Defendant Burnett or Defendant Urbanski, it fails for the same reason.  Assuming, as the Court must at the Motion to Dismiss stage, that Burnett cleared Plaintiff to leave medical

---

[16] Insofar as Plaintiff is attempting to state a First Amendment retaliation claim against Akinyombo and Furco based on these same allegations, that claim also fails.  There are no allegations in the Amended Complaint that Akinyombo and Furco knew about the attempted PREA complaint, or that would suffice to support a causal connection between the PREA complaint and their alleged actions.  (*See generally* Am. Compl.)

26

treatment without a CT scan, despite the spork inside his body, (Am. Compl. ¶ 10), Plaintiff has not alleged that he experienced serious harm or pain as a result of this action. *Cf. Garcia v. Chevalier*, No. 22-CV-1328, 2023 WL 2988891, at *6 (D. Conn. Apr. 18, 2023) ("Plaintiff's allegations indicate that Defendants . . . were aware that he was suffering from severe abdominal pain after he swallowed the metal objects, but that these Defendants failed to provide him with timely medical care until his condition required emergency surgery. These allegations suffice to state a plausible claim[.]").

4. Claims Against Defendant Akinyombo

Defendant Akinyombo argues that Plaintiff has failed to state a cause of action against him based on his asserted indifference when, after the PREA Complaint and incident with the metal clip, Plaintiff told Akinyombo that "he was having sexual affairs with [Defendant] Cebron," (Am. Compl. ¶ 9), and that Defendant Cebron was having sexual relations with the unknown "porter," (*id.*; *see also* Defs.' Mem. 12–13).  It is unclear whether Plaintiff is asserting this cause of action on his own behalf, or on behalf of other incarcerated individuals.  (*See* Am. Compl. ¶ 9 ("Defendant Deputy of Health Akinyombo violated Plaintiff['s] 8th/14th Amendment [rights.]  Plaintiff told Defendant Akinyombo he was having sexual affairs with D. Cebron and Defendant D. Cebron was having sexual affairs with [an] unknown porter.").)  As Plaintiff is proceeding *pro se*, the Court addresses both possible claims.

Standing is a doctrine that restricts a court's ability to hear cases, limiting a court so that it may "only . . . redress or otherwise . . . protect against injury *to the complaining party*." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (emphasis added); *see also, e.g.*, *Kernan v. New York State Dep't of Fin. Servs.*, 712 F. App'x 61, 65 (2d Cir. 2017) (summary order) ("As to the injury requirement, 'a plaintiff must have personally suffered an injury,' because 'the Article III

judicial power exists only to redress or otherwise to protect against injury to the complaining party.'" (internal citations omitted) (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106–07 (2d Cir. 2008))).  To satisfy the standing requirement, a plaintiff must show (1) that []he suffered "an injury-in-fact," the invasion of a "legally protected interest" that is both (a) "concrete and particularized" and (b) "actual or imminent"; (2) a "causal connection between the injury" and the challenged conduct; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks and citations omitted).  "A plaintiff must demonstrate standing for each claim and form of relief sought."  *Carver v. City of N.Y.*, 621 F.3d 221, 225 (2d Cir. 2010) (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003) (alteration adopted)).

To the extent Plaintiff is attempting to bring a claim on behalf of the unidentified "porter" or any other incarcerated individual, he lacks standing to do so.  *See, e.g.*, *Gray-Davis v. Rigby*, No. 14-CV-1490, 2016 WL 1298131, at *7 (N.D.N.Y. Mar. 31, 2016) ("While plaintiffs may exercise third-party standing in some circumstances, [a] section 1983 civil rights action is a personal suit and may not be brought by [another]." (internal quotation marks and citation omitted)); *Rainey v. Ponte*, No. 16-CV-6336, 2017 WL 3267746, at *2 (S.D.N.Y. July 31, 2017) ("[T]o have standing to bring a claim under Section 1983, a plaintiff must show that he personally suffers from a violation of his civil rights.").

Plaintiff's Amended Complaint may also be read as asserting an Eighth Amendment or Fourteenth Amendment claim against Akinyombo on Plaintiff's own behalf.  These claims also fail.  As multiple courts in the Second Circuit have held, there "is no private right of action to bring a suit under the PREA."  *Bright v. Annucci*, No. 18-CV-11111, 2021 WL 4461682, at *17

28

(S.D.N.Y. Sept. 28, 2021); *see also Miller v. Annucci*, No. 17-CV-4698, 2019 WL 4688539, at

*10 (S.D.N.Y. Sept. 26, 2019) ("[N]othing in the statute suggests that PREA intended to

establish a private claim for allegations of prison rape[.]" (citation omitted)).  The same is true

more generally of constitutional claims based on an officer's failure to investigate.  *See Alan v.*

*U.S. Dep't of Just.*, 697 F. Supp. 3d 9, 14 (W.D.N.Y. 2023) (noting there is no Fourteenth

Amendment claim based on failure to investigate by federal agencies); *Buari v. City of N.Y.*, 530

F. Supp. 3d 356, 389 (S.D.N.Y. 2021) (same as to police officer's failure to investigate); *Johnson*

*v. Cook*, No. 3:19-CV-1464, 2021 WL 2741723, at *8 (D. Conn. July 1, 2021) (allegations of

failure to act on PREA complaint "do not state a claim of a violation of [plaintiff's]

constitutionally or federally protected rights").[17]

　　5. Qualified Immunity

　　A police officer or other government official will be protected from liability for his

discretionary actions by the doctrine of qualified immunity "where '(1) his conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known, or (2) it was objectively reasonable for him to believe that his actions were lawful

at the time of the challenged act.'"  *Delgado v. City of N.Y.*, No. 19-CV-6320, 2023 WL

6390134, at *7 (S.D.N.Y. Oct. 2, 2023) (quoting *Jenkins v. City of N.Y.*, 478 F.3d 76, 87 (2d Cir.

2007)); *see also Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (same).  Qualified

immunity "gives government officials breathing room to make reasonable but mistaken

judgments," and it protects "all but the plainly incompetent or those who knowingly violate the

---

[17] A Fourteenth Amendment claim would likely fail for the additional reason that the "complaint provides no clue as to how [P]laintiff believes he was treated differently than other similarly situated individuals or what protected liberty interest he claims to have been deprived of without due process." *Hardy*, 2010 WL 1633379, at *8

law." *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)); *see also Bangs v. Smith*, 84 F.4th 87, 101 (2d Cir. 2023) (same); *Murphy v. City of Elmira*, No. 18-CV-6572, 2023 WL 5938777, at *10 (W.D.N.Y. Sept. 12, 2023) (same).

Courts "apply a two-step analysis to determine whether qualified immunity bars a plaintiff's claim against government officials for civil damages related to actions taken in the course of their official duties." *Sabir v. Williams*, 52 F.4th 51, 58 (2d Cir. 2022) (citing *Francis v. Fiacco*, 942 F.3d 126, 139 (2d Cir. 2019)). "Under that test, qualified immunity shields a defendant-official from money damages unless the 'plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Tanvir v. Tanzin*, 120 F.4th 1049, 1060 (2d Cir. 2024) (quoting *Ashcroft*, 563 U.S. at 735). Further, "qualified immunity depends on the facts known to the official at the time of the alleged violation." *Tanvir*, 120 F.4th at 1060. As a result, defendants are "immune from damages liability if 'reasonable persons in their position would not have understood that their conduct was within the scope of the established prohibition.'" *Id.* (quoting *Wiggins*, 86 F.4th at 994).

Given that the Court determined that Plaintiff failed "[to] plead[] facts showing . . . that the [Defendant] official[s] violated a statutory or constitutional right," *Tanvir*, 120 F.4th at 1060 (quoting *Ashcroft*, 563 U.S. at 735), as to (1) the "Defendant Superintendent" placing him in keeplock on December 14, 2021; (2) the Eighth or First Amendment claim against Furco; (3) the claims against Akinyombo; and the Eighth Amendment claims against Defendants Urbanski and Burnett, the Court determines that Defendants are entitled to qualified immunity as to these claims, *see Nat'l Rifle Ass'n of Am. v. Vullo*, 144 F.4th 376, 389 (2d Cir. 2025)

30

("[Q]ualified immunity is defeated only if *both* requirements are met and applies so long as *one* is not met." (emphases in original)).

The Court concludes, however, that Defendant Urbanski is not entitled to qualified immunity on Plaintiff's First Amendment retaliation claim at the motion to dismiss stage. At the time the alleged violation occurred, the test for First Amendment retaliation was clearly established in this Circuit. *See Gill*, 389 F.3d at 380 ("We have previously held that, to sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" (citing *Dawes*, 239 F.3d at 492, *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). It was likewise established that filing grievances is "constitutionally protected" activity, *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) ("[Plaintiff] meets the first prong . . . . His claimed conduct—namely, his filing of a grievance and attempt to find inmates to represent the grievants—is constitutionally protected."), and that placing an individual in keeplock can constitute adverse action, *Gill*, 389 F.3d at 383 ("In the prison context, the harm could include such an adverse action as placing a plaintiff in keeplock for a period of weeks."). Finally, the Second Circuit had already explained that a plaintiff could "establish causation . . . directly through a showing of retaliatory animus." *Smith*, 776 F.3d at 118. If the facts alleged were proven and construing those facts in the light most favorable to the Plaintiff, Urbanski would not be entitled to qualified immunity on Plaintiff's First Amendment retaliation claim. Accordingly, the Court "cannot conclude at this stage that [Defendant Urbanski is] entitled to qualified immunity on [Plaintiff's] retaliation claim." *Granger v. Santiago*, No. 19-CV-60, 2021 WL 4133752, at *8 (D. Conn. Sept. 10, 2021).

6. Failure to Prosecute

Defendants have further requested that this Court dismiss Plaintiff's claims in their entirety, including against Defendant Cebron, for failure to prosecute.[18]  (Letter from Owen M. Crowley, Esq. to Court (June 23, 2025) 1–2; Letter from Owen M. Crowley, Esq. to Court (July 16, 2025) 1–2.)  The Court retains the authority to order such a dismissal either upon a defendant's motion, or *sua sponte*.  *See LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001); Fed. R. Civ. P. 41(b).

> [A] district court contemplating dismissing a plaintiff's case, under Rule 41(b), for failure to prosecute must consider: "[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has take[n] care to strik[e] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard . . . and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.

*LeSane*, 239 F.3d at 209.  The Court recognizes that the duration of Plaintiff's failures to prosecute has been considerable, and that Plaintiff received notice that further delays would result in dismissal.  (*See* Order to Show Cause (Dkt. No. 68) (order issued on October 15, 2024, directing Plaintiff to show cause why he had not waived right to file a Second Amended Complaint by November 14, 2024); Order (Dkt. No. 69) (deeming right waived on December 17, 2024); Order to Show Cause (Dkt. No. 74) (directing, on February 6, 2025, Plaintiff to show cause by March 10, 2025 why the case should not be dismissed for failure to prosecute); Letter from David Gibson to Court (March 30, 2025) (Dkt. No. 75) (explaining that Plaintiff was admitted to a psychiatric center and could not conduct legal research via Westlaw); Mot. to

---

[18] The Court has already determined that Plaintiff would no longer be granted leave to file a Second Amended Complaint, construing his delay in filing the document as a waiver of his right to do so.  (*See* Order 2 (Dkt. No. 69).)

Refile (Dkt. No. 76) (attempting to move for default judgment).)  Indeed, he received notice of the possibility of dismissal over a year ago.  (Order to Show Cause (Dkt. No. 74).)  However, there is no indication that Defendants would be significantly prejudiced by the further delay. The viability of some of Plaintiff's claims suggests that Plaintiff's due process rights would be implicated by dismissal, and Plaintiff deserves a fair chance to be heard.  *See Ruzsa v. Rubenstein & Sendy Attys at L.*, 520 F.3d 176, 177–78 (2d Cir. 2008) (per curiam) (affirming district court's decision to delay dismissal and afford plaintiff "ample time to inform the [c]ourt that he stood ready to press his claims").  These concerns are heightened given that Plaintiff has recently sent additional letters to the Court suggesting significant difficulties conducting legal research and prosecuting his case from the psychiatric treatment center where he is currently housed.  (*See, e.g.*, Letter from David Gibson to the Court (Aug. 22, 2025).)  The Court has already imposed the "lesser sanction" of concluding that Plaintiff would not be permitted a second opportunity to amend his complaint, but nevertheless concludes that Plaintiff's need for a fair chance to be heard weighs more heavily in the balance.

In light of these difficulties—while still crediting the concerns raised in Defendants' letter requests asking the Court to dismiss the claims for failure to prosecute—the Court will grant Plaintiff ***one more opportunity*** to show cause why the remaining claims in this case should not be dismissed for failure to prosecute.  Plaintiff is advised that continued failure to respond substantively ***will result in dismissal of the entire case***.

### III.  Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss is granted in part and denied in part.  The claims against Defendants Burnett, Akinyombo, and Furco, as well as the Eighth Amendment claim against Defendant Urbanski are dismissed without prejudice.  The

Motion to Dismiss is denied as to the First Amendment retaliation claim against Defendant Urbanski.

Plaintiff shall show cause by no later than May 29, 2026, as to why this case should not be dismissed for failure to prosecute. *See Armstrong v. Guccione*, 470 F.3d 89, 102 n.1 (2d Cir. 2006) (noting that "a federal district court has the inherent power to dismiss a case *sua sponte* for failure to prosecute" (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–32 (1962)). **Again, the Court may dismiss this case *without further notice* in the event that good cause is not shown.** *See Smith v. Dinoia*, No. 19-CV-4471, 2020 WL 4041449, at *1 (S.D.N.Y. July 17, 2020) (converting dismissal of claims without prejudice to dismissal with prejudice after failure to show cause).

The Clerk of the Court is respectfully directed to terminate the pending Motions at Dkt. Nos. 85 and 89, and to mail a copy of this Order and Opinion to Plaintiff.

SO ORDERED.

Dated:   March 30, 2026
         White Plains, New York

KENNETH M. KARAS
United States District Judge

34